UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 DEC 19  PM 3: 07

CLERK

BY___*EH*___

DEPUTY CLERK

| | | |
|---|---|---|
| MICHAEL MASON and JENNILEE MASON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:21-cv-267 |
| | ) | |
| GRACE HOSPITALITY, LLC d/b/a THE KNOLL INN, and d/b/a THE BUDGET INN; DAAT, INC., MEHER LODGING LLC, AMRINDER TIWANA a/k/a AMANDA SINGH, and DIPENDER SINGH a/k/a DAVID SINGH, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS TO COMPEL
### (Docs. 31, 32, 33, 34, 35, 41)

In this suit arising out of Plaintiffs Michael Mason and Jennilee Mason's employment as motel innkeepers for the above-captioned defendants,[1] Plaintiffs seek to recover allegedly unpaid minimum wage and overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") (Counts I and II), and further allege violations of FLSA's anti-retaliation provisions (Count III). Plaintiff Jennilee Mason also alleges unlawful sexual discrimination under the Vermont Fair Employment Practices Act, 21 V.S.A. § 495 (Count IV), and both plaintiffs further allege unpaid minimum wages in violation of 21 V.S.A. § 384 (Count V), retaliation in violation of 21 V.S.A. § 397 (Count VI), failure to timely pay wages in violation of 21 V.S.A. § 342 (Count VII), and retaliation in violation of 21 V.S.A. § 348 (Count VIII).

---

[1] The five defendants are: (1) Grace Hospitality, LLC d/b/a The Knoll Inn and d/b/a The Budget Inn (collectively "Grace Hospitality"); (2) DAAT, Inc. ("DAAT"); (3) Meher Lodging LLC ("Meher"); (4) Amrinder Tiwana a/k/a Amanda Singh ("Ms. Singh"); and (5) Ms. Singh's husband Dipender Singh a/k/a David Singh ("Mr. Singh").

(*See* Am. Compl., Doc. 15.)  Defendants have answered and asserted three affirmative defenses: lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.  (Doc. 21.)  Discovery is underway pursuant to a stipulated discovery schedule.  (Doc. 26.)

A discovery dispute has arisen.  Plaintiff Jennilee Mason has filed six motions to compel. (Docs. 31–35, 41.)  Those motions are fully briefed.  For the reasons below, all six motions are granted in part and denied in part.

## **Background**

Defendants served their Rule 26 initial disclosure on July 13, 2022.  (Doc. 29; *see also, e.g.*, Doc. 31-2.)  Defendants listed the following fact witnesses under Federal Rule of Civil Procedure 26(a)(1)(A)(i):

David Singh

Amanda Singh

James Taylor resides at the Budget Motel

James Saunders Granville NY

In addition, any individuals disclosed by Plaintiffs.  It is also expected that as discovery is conduct[ed] additional individuals will be identified and disclosed and supplemented as necessary.

(Doc. 31-2 at 2.)  Defendants also listed the following documents and evidence under Rule 26(a)(1)(A)(ii):

ADA Pay records

Text messages between the parties.

See attached.

It is also expected that as discovery is conduct[ed] additional documents will be identified and disclosed and supplemented as necessary.

(*Id.* at 2–3.)

2

Plaintiff Jennilee Mason served a Request for Production and a First Set of Interrogatories on each of the five defendants on July 15, 2022. (*See, e.g.*, Doc. 31-1 (Interrogatories and Answers); Doc. 41-1 (Requests for Production and Responses).) The parties' attorneys conferred after Defendants failed to serve timely responses. On August 31, 2022, each defendant served responses to the interrogatories.[2] Each defendant also served responses to the requests for production on that date.[3]

Counsel for Ms. Mason emailed defense counsel on September 1, 2022 outlining alleged deficiencies with the interrogatory responses. Grace Hospitality, LLC and the Singhs each provided supplemental responses to the interrogatories on September 2, 2022. (Docs. 43-1, 44-1.) Counsel for Ms. Mason emailed defense counsel on September 3, 2022 outlining alleged deficiencies with the responses to the production requests. The parties' attorneys subsequently spoke by telephone and exchanged emails regarding Defendants' responses, but they were unable to negotiate a resolution. (*See* Doc. 31 at 2 ("[N]umerous issues remain in dispute . . . ."); Doc. 43 at 1 ("[T]he parties have simply come to an impasse.").)

Ms. Mason filed the pending motions in September 2022, seeking to compel each defendant to provide further responses to both the interrogatories and the requests for production. (Docs. 31, 32, 33, 34, 35, 41.) Defendants state that they stand by their initial and supplemental responses. (Doc. 43 at 2; Doc. 45 at 1; Doc. 46 at 1; Doc. 44 at 2.) Grace Hospitality asserts: "Just because the plaintiffs may not get a response to a particular interrogatory they want or expect, doesn't make the response deficient. In addition (and the most common approach)

---

[2] (Doc. 31-1 (Grace Hospitality's responses); Doc. 32-1 (DAAT); Doc. 33-1 (Meher); Doc. 34-1 (Mr. Singh); Doc. 35-1 (Ms. Singh).)

[3] (Doc. 41-1 (Grace Hospitality's response); Doc. 41-2 (DAAT); Doc. 41-3 (Meher); Doc. 41-4 (Mr. Singh); Doc. 41-5 (Ms. Singh).)

plaintiffs, have the ability at a deposition, to question the defendants on their various responses to interrogatories." (Doc. 43 at 1.)

## Analysis

Regarding the availability of depositions, Ms. Mason asserts that she is entitled to obtain written discovery from Defendants before taking their depositions. (Doc. 50 at 2–3.)[4] She quips that "[t]here is no 'mom and pop' exception to the Federal Rules of Civil Procedure." (Doc. 50 at 3.) That is true. But the rules do require that discovery be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The court will enforce that requirement in its analysis below.

## I.   Timeliness of Objections

The court begins with Ms. Mason's general argument that each defendant's objections to the interrogatories and production requests are waived because the responses were untimely. (Doc. 31 at 3; Doc. 32 at 3; Doc. 33 at 3; Doc. 34 at 3; Doc. 35 at 3; Doc. 41 at 6.) The rule governing interrogatories requires: "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." Fed. R. Civ. P. 33(b)(2). The rule governing production requests includes a similar time limitation. Fed. R. Civ. P. 34(b)(2)(A). Rule 33 further states that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Courts generally apply the same rule to document requests. *See, e.g., Star Fabrics, Inc. v. Gogo Apparel, Inc.,* No. 19-MC-144 (JMF), 2019 WL 3302610, at *1 (S.D.N.Y. July 23, 2019).

---

[4] Ms. Mason cites no authority for that proposition. To the contrary, "[a]lthough it is not unusual for parties to engage in written discovery before conducting deposition discovery, there is no rule requiring that discovery progress in that order." *Murphy v. Maggs*, No. 18-CV-6628FPG, 2022 WL 4098399, at *6 (W.D.N.Y. Aug. 17, 2022), *report and recommendation adopted*, 2022 WL 4095839 (W.D.N.Y. Sept. 7, 2022).

Here, there is no dispute that Defendants did not serve their responses and objections until August 31, 2022—47 days after Ms. Mason served the interrogatories and requests for production on July 15, 2022. Defendants have not explicitly raised any request that this 17-day delay be excused for "good cause." However, courts in this circuit apply Rule 33(b)(4)'s waiver language "with some discretion"—especially where the delay in filing responses is not egregious or substantial. *Country Home Prods., Inc. v. Banjo*, No. 2:15-cv-00037-cr, 2016 WL 9344261, at *4 (D. Vt. Nov. 14, 2016).

Such discretion is warranted in this case.[5] The 17-day delay was neither egregious nor substantial. There are a limited number of objections, and before bringing their discovery dispute to court, the parties discussed their positions on the merits of the objections. The court is satisfied that Defendants' short delay was not deliberately evasive, and further concludes that the interests of justice and expedience favor court consideration of the merits of Defendants' objections together with the sufficiency of their other responses rather than rejecting them on procedural grounds.

## II.   Interrogatories (Docs. 31, 32, 33, 34, 35)

Five of the six motions to compel concern Defendants' interrogatory responses. There is one such motion to compel for each of the five defendants. The court has organized its discussion by interrogatory number. Some, but not all, of the interrogatories are the same for each defendant. The court notes below where the interrogatories are different for different defendants.

---

[5] Still, the better practice would have been for the defense to avoid the problem by seeking a stipulated extension of time or by seeking an extension from the court.

### A.    Interrogatory 1

Interrogatory 1 asks each defendant to identify:

> [A]ll persons who have, claim to have, or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings (as defined in Fed. R. Civ. P. 7(a)) filed in this Action, or any fact underlying the subject matter of this Action, and provide the substance of their knowledge, and each such person's job title, dates of work and/or employment, address, date of birth, telephone number and email address.

(Doc. 31-1 at 2; Doc. 32-1 at 2; Doc. 33-1 at 2; Doc. 34-1 at 2; Doc. 35-1 at 2.)

In their August 31, 2022 responses, Defendants stated: "Object as this information has previously been provided in the Defendants' initial disclosure" (Doc. 31-1 at 2; Doc. 32-1 at 2; Doc. 33-1 at 2) or "See re[s]po[n]se to initial disclosure as previously provided" (Doc. 34-1 at 2; Doc. 35-1 at 2).  Ms. Mason asserted that the objection was groundless, arguing: "The mere fact that Rule 26 requires your client to make Initial Disclosures does not mean you can simply object to an interrogatory requesting witness information.  Moreover, Interrogatory #1 goes beyond what was produced in your Rule 26 disclosures and asks for more information tha[n] what was provided, previously." (Doc. 43-1 at 2.)  Grace Hospitality and the individual defendants supplied the following supplemental response:

> James Taylor, currently an employee of Grace Hospitality LLC and manager of Budget Inn.  Mr. Taylor is believed to have information regarding his interactions with Jennilee Mason and Mike Mason as well as the duties and work performed by a motel manager including the amount of time spent doing said duties.
>
> Jimmy Saunders, currently an employee of Grace Hospitality LLC.  Mr. Saunders is [a] construction contractor and is believed to have information regarding his interactions with Jennilee Mason and Mike Mason.

(Doc. 43-1 at 2, Doc. 44-1 at 2, 6.)

Ms. Mason argues that Defendants cannot satisfy Interrogatory 1 by referring to the initial disclosures because the initial disclosures were not under oath.  (Doc. 31 at 3–4; Doc. 32 at 3; Doc. 33 at 3–4; Doc. 34 at 3–4; Doc. 35 at 3–4.)  Ms. Mason is correct on this point.  The

rule governing initial disclosures requires signing but does not require that the disclosures be made under oath. *See* Fed. R. Civ. P. 26(a)(4), (g). In contrast, the rule governing *interrogatories* requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Defendant cannot satisfy the "under oath" requirement by relying solely on unsworn initial disclosures. *See Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 11532403, at *5 & n.7 (S.D. Fla. Feb. 4, 2014) (comparing Rule 26's signature requirement with Rule 33's "under oath" requirement; finding defendant's answers to interrogatories insufficient where defendant merely referred the plaintiff to Rule 26 disclosures; citing cases).[6]

There are additional deficiencies with Defendants' responses to Interrogatory 1. First, the initial disclosures do not respond to the interrogatory's request for the substance of each individual's knowledge, their job title, dates of work, address, date of birth, telephone number, and email address. Second, and "[m]ore significantly, under Rule 26(a)(1)(A)(i) [governing initial disclosures], a disclosing party is only required to identify the individuals that it may use to support *its own* claims or defenses." *Karhu*, 2014 WL 11532403, at *5 (emphasis added). Interrogatory 1, in contrast, is not so limited; it requests identification of *all* persons with knowledge of any fact in the pleadings or underlying the subject matter of the action. The court will accordingly require Defendants to respond to Interrogatory 1 as required by Rule 33.

## B.    Interrogatory 2

Interrogatory 2 asked each defendant to "[p]lease identify each person who was involved, consulted, provided information, or participated in the decision to terminate the employment or

---

[6] The fact that some of the defendants purported to "object" to Interrogatory 1 does not excuse the "under oath" requirement, since the objections were merely that the requested information had already been supplied in the initial disclosures.

working relationship of either Plaintiff, or participated in the decision to terminate their tenancy." (Doc. 31-1 at 2; Doc. 32-1 at 2; Doc. 33-1 at 2; Doc. 34-1 at 2; Doc. 35-1 at 2.) In five subparts, Interrogatory 2 further asked Defendants to provide specific information on that topic, including dates and reasons for the conduct.

DAAT and Meher each responded that they "had no employees." (Doc. 32-1 at 3; Doc. 33-1 at 3.) Grace Hospitality and the Singhs responded: "David and Amanda Singh made the decision to terminate Jennilee Mason's employment. Jennilee was an *at will* salaried employee. Based on Jennilee's poor performance as a housekeeper and misappropriation of petty cash, the Singh's made the decision to terminate her employment." (Doc. 31-1 at 3; Doc. 34-1 at 3; Doc. 35-1 at 3.) Grace Hospitality and the Singhs further stated in their supplemental responses:

> David and Amanda did receive multiple complaints from tenants about cleanliness of their rooms. This was confirmed by Jimmy Saunders who performed random checks on rooms during maintenance and construction. However, as the response states, the Singh's made the decision to terminate Jenni alone. Nobody else was involved, consulted, provided information, or participated in the decision.

(Doc. 43-1 at 2; Doc. 44-1 at 2, 6.)

### 1.    Grace Hospitality and the Singhs

Ms. Mason lists seven alleged deficiencies in the responses supplied by Grace Hospitality and the Singhs. (Doc. 31 at 5–6.) As noted above, Grace Hospitality asserts: "Just because the plaintiffs may not get a response to a particular interrogatory they want or expect, doesn't make the response deficient. In addition (and the most common approach) plaintiffs, have the ability at a deposition, to question the defendants on their various responses to interrogatories." (Doc. 43 at 1.) The Singhs state that they gave Ms. Mason their "final position" in their supplemental responses. (Doc. 44 at 1.) Ms. Mason replies that these defendants "never even attempt[] to show how [they] answered the subparts of Interrogatory #2." (Doc. 47 at 3; 50 at 3.)

The court begins with the first of Ms. Mason's seven arguments. Before Defendants filed their supplemental response, Ms. Mason argued that—although their response stated that the Singhs alone made the decision to terminate—it failed to clearly state "who was involved, consulted, provided information, or participated in the decision to terminate the employment or working relationship of either Plaintiff, or participated in the decision to terminate their tenancy." The supplemental response clarifies that no others were involved in the decision to terminate Ms. Mason's employment. But Interrogatory 2 asks about more than just the decision to terminate that employment relationship. The court will require Grace Hospitality and the Singhs to clarify whether their answer is the same as to the decisions to end any working relationship with Mr. Mason and to terminate the plaintiffs' tenancy.

This conclusion resolves many of Ms. Mason's remaining arguments about the responses to Interrogatory 2. Her second argument is that the answer fails to respond to subpart (a)'s request regarding the reasons for termination of the tenancy. As stated above, the court will require Grace Hospitality and the Singhs to clarify whether their answer is the same as to the decision to terminate the plaintiffs' tenancy. Her third argument is that the answer fails to give the reasons for the termination of Mr. Mason's "working relationship." The court requires Grace Hospitality and the Singhs to clarify whether their answer is the same as to the decisions to end any working relationship with Mr. Mason.

Ms. Mason's fourth argument is that the answer fails to respond to subpart (b)'s request for the identity of "each person who participated in providing information, the date provided, and substance of information." (Doc. 31 at 4.) The supplemental response clarifies that no others provided information relative to the decision to terminate Ms. Mason's employment. But Interrogatory 2 asks about more than just the decision to terminate that employment relationship.

9

The court requires Grace Hospitality and the Singhs to clarify whether their answer is the same as to the decisions to end any working relationship with Mr. Mason and to terminate the plaintiffs' tenancy.

Ms. Mason's fifth argument is that the answer fails to respond to subpart (c)'s request for the identity of

> each person who provided any information relied upon in the decision to terminate either Plaintiffs employment, work, working relationship, or the termination of their tenancy; the substance of the information provided; whether the information was requested, and if so, identify who requested the information, the date it was requested, and the date the information was provided.

(Doc. 31 at 4.) Since Grace Hospitality and the Singhs' responses do not explicitly cover the decisions to end any working relationship with Mr. Mason or to terminate the plaintiffs' tenancy, the court will require them to clarify.

Ms. Mason's sixth argument is that the answer fails to respond to subpart (d)'s request that Defendants identify "all documents and communications relied upon in reaching the decision to terminate either Plaintiffs' employment, work, working relationship, or the termination of their tenancy." (Doc. 31 at 4.) The court requires that Defendants identify any such documents if they exist.

Finally, Ms. Mason argues that the answer fails to respond to subpart (e)'s request that Defendants "[s]tate the reasons and factual basis for the termination of employment, termination of work, or termination of tenancy, as well as the respective dates on which the grounds for said termination, respectively, arose." (Doc. 31 at 4.) Grace Hospitality and the Singhs have supplied the reasons for the termination of Ms. Mason's employment. They have not supplied the date(s) those reasons arose, nor have they stated the reasons and factual basis for the termination of Mr. Mason's working relationship or the termination of the tenancy. The court will require responses on those issues.

### 2.    DAAT and Meher

Ms. Mason asserts that DAAT and Meher's responses—that they had no employees—is insufficient.  She contends that Interrogatory 2 "does not hinge on the Plaintiffs or other workers being 'employees' *per se*."  (Doc. 32 at 5; Doc. 33 at 5.)  DAAT and Meher maintain that they are both purely "real estate holding compan[ies]" for The Budget Inn (DAAT) and for The Knoll Motel (Meher).  (Doc. 45 at 1; Doc. 46 at 1.)  Ms. Mason insists that if DAAT or Meher have knowledge of the answers to Interrogatory 2, it must supply those answers "regardless of whether it is a 'holding company,' [or] whether it has no employees."  (Doc. 48 at 3; Doc. 49 at 3.)  The court agrees that although DAAT and Meher have no employees, those defendants must respond to Interrogatory 2.  If they have no knowledge of the answers, they must so state in a formal response, under oath, as is required.  Fed. R. Civ. P. 33(b)(3).

### C.    Interrogatory 3

Interrogatory 3 requested as follows:

> For the period of September 9, 2019 through to the present, provide the identity of each person (employees and also persons you classify as independent contractors) who worked on the premises of GRACE.  For each calendar day in that period, identify the specific person working on each shift, the hours comprising each shift, the duties performed by each worker on each calendar day, and the total hours worked in the week by each worker.

(Doc. 31-1 at 3; Doc. 32-1 at 3; Doc. 33-1 at 3; Doc. 34-1 at 3–4; Doc. 35-1 at 3–4.)

### 1.    The Singhs

Responding to Interrogatory 3, the Singhs stated:

> Object this interrogatory is overly broad and overly burdensome, without waiving said objection Grace Hospitality employees who worked at the Knoll Inn and the Budget Inn during the relevant times were Jennilee Mason, Jimmy Saunders, and James Taylor.  Mike Mason was never hired on as an employee, however he was allowed to cover for Jennilee when she was working her housekeeping job or was unavailable because of personal reasons.

The work description for the Knoll Inn, a 6-room motel, was as follows:

a.      Housekeeping (approx. 10 hours/week)

b.      Laundry (approx. 4 hours/week random)

c.      Guest check-in (as needed)

d.      Mowing/Snow plowing (4 hours/week averaged over the year)

The scope of work was approximately about 20–25 hours a week and with a flexible schedule so she could continue her cleaning business (Mike Mason was allowed to fill in for Jennilee as needed).  Text messages were exchanged when a job or task need[ed] to be done like a room turn over or a check in or out.

(Doc. 34-1 at 4; Doc. 35-1 at 4.)

Ms. Mason asserts that the Singhs' objection is impermissible "boilerplate." (Doc. 34 at 6.)  Under Rule 33, "[t]he grounds for objecting to an interrogatory must be stated with specificity."  Fed. R. Civ. P. 33(b)(4).  The court concludes that the Singhs' objection constitutes problematic "conditional boilerplate"—a type of response that "invariably 'leaves the opposing party in the dark as to whether something unidentified has been withheld.'" *Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-cv-125, 2019 WL 12323321, at *5 (D. Vt. June 10, 2019) (quoting Amir Shachmurove, *Policing Boilerplate: Reckoning & Reforming Rule 34's Popular—Yet Problematic—Construction*, 37 N. Ill. U. L. Rev. 203, 244 (2017)).  The court observes, however, that the second sentence of Interrogatory 3 requests a significant quantity of detailed data—including hours worked and tasks performed by each worker for more than 1,000 days.  Even assuming that the Singhs have or could generate such records, their production does not appear to be proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  The court will not order production of those detailed records at this time.

Ms. Mason argues that Interrogatory 3 is not limited to workers who might have been "employees" of any of the defendants.  (Doc. 34 at 7; Doc. 35 at 7.)  Certainly the interrogatory covers workers who were independent contractors.  It is less clear whether the interrogatory

12

covers workers in any other category—such as volunteers, interns, or otherwise. Nevertheless, without labeling Mr. Mason as either an employee or an independent contractor, the Singhs identified him as one of the individuals who performed work at the premises. The court finds that to be sufficiently responsive to the request for the identity of each worker.

### 2. The Corporate Defendants

Grace Hospitality responded that it is "an operating entity that operates the Knoll Inn and the Budget Inn but does not own a physical premises." (Doc. 31 at 6.) DAAT and Meher both responded that they "had no employees." (Doc. 32-1 at 3; Doc. 33-1 at 3.)

Ms. Mason contends that whether Grace Hospitality owns any real property and whether DAAT and Meher had any employees are immaterial to Interrogatory 3. (Doc. 47 at 3; Doc. 48 at 3.) The court agrees that these defendants must respond to Interrogatory 3. If they have no knowledge of the answers, they must so state in a formal response, under oath, as is required. Fed. R. Civ. P. 33(b)(3).

### D. Interrogatory 4

Interrogatory 4 asked whether each defendant "ever request[ed] Michael Mason or Jennilee Mason [to] perform any work or duties." (Doc. 31-1 at 4; Doc. 32-1 at 4; Doc. 33-1 at 3; Doc. 34-1 at 4; Doc. 35-1 at 4.) If so, the interrogatory requested the identification of:

> [E]ach calendar day either Plaintiff performed any work or was employed by the Defendant, the number of hours and minutes each Plaintiff worked each day and each workweek, the times when Michael Mason or Jennilee Mason commenced and ceased working each calendar day; and the time and date of any sleep, meal, or break periods you contend the Plaintiffs took.

(*Id.*) DAAT and Meher both responded "No" to this interrogatory. (Doc. 32-1 at 4; Doc. 33-1 at 4.) Ms. Mason does not take issue with those responses.

Grace Hospitality and the Singhs supplied the same response that the Singhs gave to Interrogatory 3: an objection based on overbreadth and burden, and a statement about individuals

who worked at the premises, a work description for the Knoll Inn, and a statement about a 20–25 hour-per-week total scope of work.  (Doc. 31-1 at 4; Doc. 34-1 at 5; Doc. 35-1 at 4–5.)  Ms. Mason contends that this answer "is a mish mosh and goes off on multiple tangents from what is *actually* being asked."  (Doc. 31 at 7; Doc. 34 at 8; Doc. 35 at 8.)

The court's conclusion on this issue is largely the same as its conclusion regarding Interrogatory 3.  Even assuming that Grace Hospitality or the Singhs have or could generate the detailed records requested, their production does not appear to be proportional to the needs of the case.  The court will not order production of those detailed records at this time.  However, the court will require Grace Hospitality and the Singhs to clarify whether their answers also apply to work performed at the Budget Inn as well as at the Knoll Motel.

### E.        Interrogatory 5

As noted above, Defendants' Answer asserts three affirmative defenses: lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.  Interrogatory 5 asked each defendant to "[p]lease state and fully set forth all *facts* which you believe support each and every Affirmative Defense that the Defendant asserts or will assert, and identify all documents relied upon in your response (by Bates Number)." (Doc. 31-1 at 4–5; Doc. 32-1 at 4; Doc. 33-1 at 4; Doc. 34-1 at 5; Doc. 35-1 at 5.)  Each defendant responded: "Object, at this time as discovery is ongoing will supplement as required by the local rules," (Doc. 31-1 at 5; Doc. 32-1 at 4; Doc. 33-1 at 4), or "Object at this time as discovery is ongoing" (Doc. 34-1 at 5; Doc. 35-1 at 5).  Ms. Mason asserts that these responses are frivolous, arguing that Defendants "cannot be permitted to assert affirmative defenses without having a factual basis—nor should the Plaintiff be left to guess."  (Doc. 31 at 8; Doc. 32 at 6; Doc. 33 at 6; Doc. 34 at 8; Doc. 35 at 8.)

Interrogatory 5 is a "contention interrogatory."  Such interrogatories are permissible but are governed by the following provision of Rule 33:

> An interrogatory may relate to any matter that may be inquired into under Rule 26(b).  An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2).  Defendants have not requested a court order under Rule 33(a)(2), nor can the court discern any basis for such an order.  Defendants' objection is insufficient to avoid the obligation to respond with the facts that are presently available to Defendants.  The court will require Defendants to do so.

### F.     Interrogatory 6—Corporate Defendants

Interrogatory 6 asked each corporate defendant to answer three questions if the defendant claimed to have furnished Plaintiff with board, lodging, housing or other facilities:

> (a) state on what specific date (and from/with whom) you determined the reasonable cost or fair value of that board, lodging, housing or other facilities[;]

> (b) provide an accounting of the value attached to the reasonable cost and fair value for food, board, lodging, housing or other facilities, with the mathematical computation or methodology used for the determination[;]

> (c) and identify by Bates stamp number, each record you kept reflecting the reasonable cost and the fair value of board, lodging, housing or other facilities (and if so, the date of each record and its date of creation).

(Doc. 31-1 at 5.)[7]

### 1.     DAAT and Meher

DAAT and Meher each responded that they did not provide housing.  (Doc. 32-1 at 5; Doc. 33-1 at 4.)  Ms. Mason asserts that this response is deficient because Interrogatory 6 asks

---

[7] The request for identification by Bates stamp numbers for Interrogatories 5 and 6 is addressed below.

about more than "housing." (Doc. 32 at 6; Doc. 33 at 6.) The court agrees that Interrogatory 6

asks for responses to subparts (a)–(c) if the defendant provided Ms. Mason with "board, lodging,

housing or other facilities." But the court interprets DAAT and Meher's responses as stating that

they provided no such services or benefits. The court will not require any further response on

this interrogatory from these defendants.

### 2. Grace Hospitality

Grace Hospitality's response to Interrogatory 6 was:

> For the 2 years prior to Jennilee becoming an employee [she] and her husband Mike
> Mason along with their 3 kids and pets rented Room #3 at the Knoll Inn, a 2 room
> suite for $350.00 a week. In 2019 when Jennilee approached the Singh's about
> working at the Knoll Inn she asked for $100 off the rent. It was decided by the
> Singh's that the rent for Room #3 ($350.00 a week) would be completely waived
> in return for Jennilee['s] employment[.] [I]n addition on November 1, 2019 it was
> decided to add a salary of $150 a week for Jennilee.

(Doc. 31-1 at 5.) Ms. Mason faults Grace Hospitality for failing to fully answer the questions in

subparts (a)–(c). (*See* Doc. 31 at 8–9.) The court requires Grace Hospitality to supply the

following, if able:

- The specific date that it determined the reasonable cost or fair value of the rental of

  Room #3 at the Knoll Inn to Ms. Mason;

- A computation or methodology used for that determination;

- Identification of each record kept reflecting the reasonable cost or fair value of the

  rental of Room #3 at the Knoll Inn to Ms. Mason.

If Grace Hospitality does not have or cannot produce the above information, it shall so state.

### G. Interrogatory 6—The Singhs

Interrogatory 6 asked the Singhs the following:

> For any work done or performed by either Plaintiff from September 1, 2019 to the
> present, please state each Plaintiff's rate of pay on a per day, per week, per month

and per pay period basis, respectively.  For each Plaintiff, state the amount and date of each payment, the number of hours of work each payment was designed to compensate, the business or financial institution from which each payment was drawn, the persons involved in delivering or in any way processing or handling each payment to the respective Plaintiffs, and whether the wages paid to Plaintiffs were either identified or made part of your federal tax filings.  Please identify all documents relied upon in responding.

(Doc. 34-1 at 5–6; Doc. 35-1 at 5–6.)  The Singhs responded with the same statement that Grace Hospitality supplied to Interrogatory 6, but also added: "Mike Mason was not an employee, but he was allowed to fill in for Jennilee when she was unable to work because of her other job. ADP Records and W-2 are being produced according to Request to Produce."  (Doc. 34-1 at 6; Doc. 35-1 at 6.)

Ms. Mason challenges the Singhs' response to Interrogatory 6 as "vague and ambiguous." (Doc. 34 at 9–10; Doc. 35 at 9–10.)  She asserts that "[i]t is unclear what Plaintiff Jennilee Mason was *actually* paid in each week.  The Defendant must succinctly answer the question." (Doc. 34 at 9; Doc. 35 at 9.)  She further asserts that "[i]f Plaintiff Michael Mason was never paid, or if he did not have a pay rate . . . the answer needs to say *that* and answer the remaining subparts."  (Doc. 34 at 9–10; Doc. 35 at 9–10.)

The court understands that Defendants have produced Ms. Mason's W-2 form and her ADP (payroll) records from 2019–2021.  (*See* Doc. 51-1 at 2.)  The court will require the Singhs to supply further responses to Interrogatory 6 insofar as those documents and the Singhs' current response do not answer each of the questions in the interrogatory.  The court further requires the Singhs to expressly state whether Mr. Mason received any pay and, if so, the pay rate he received.

## H.    Interrogatory 7—Corporate Defendants

Interrogatory 7 asked the corporate defendants:

> For each date either Plaintiff resided at your premises, state the room number and rate the Plaintiff was charged or credited for each day, week and month, respectively, as well as identify the daily, weekly and monthly rate that was charged to *other* guests/patrons having the same room type/classification on those same days.

(Doc. 31-1 at 5.) Ms. Mason does not challenge Meher's response to Interrogatory 7 (Doc. 33-1 at 4–5), so the court considers the responses of the remaining corporate defendants.

### 1.   DAAT

In response to Interrogatory 7, DAAT stated: "Plaintiffs resided at the Knoll Inn not the Budget Inn." (Doc. 32-1 at 5.) Ms. Mason asserts:

> It is simply unclear from the answer which motel location DAAT, Inc. claims as its own.  If DAAT, Inc. is claiming that Plaintiffs never resided at its motel, then it should simply just say *that*.  As phrased, the answer is unclear.  Despite undersigned counsel requesting a simple supplement to address the vagueness, the Defendant did not make any supplementation.  The Court should require it be done.

(Doc. 32 at 7.)  This is a minor issue in light of the Answer's admission that the license to operate the Budget Inn is registered to DAAT (Doc. 15 ¶ 19; Doc. 21 ¶ 19) and defense counsel's representation that DAAT is a real estate holding company for the Budget Inn (Doc. 45 at 1).  For the purpose of making the record complete, the court will require DAAT to confirm in a supplemental response whether it owns only the Budget Inn.

### 2.   Grace Hospitality

Grace Hospitality responded to Interrogatory 7 by stating: "Grace does not own any premises." (Doc. 31-1 at 5.)  Ms. Mason contends that this response fails to answer the question, which she says "has nothing to do with legal ownership of the property." (Doc. 31 at 9.)  The court agrees with Ms. Mason on this point.  This is a minor point since Meher has already provided a response that Ms. Mason has not challenged.  But for the purpose of making the record complete, the court will require Grace Hospitality to supplement its response to Interrogatory 7.

### I.     Interrogatory 7—The Singhs

Interrogatory 7 asked the Singhs:

> For the Relevant Time Period, in detail, please describe all procedures and methods by which you or any other Defendant in this case, recorded the time and/or hours worked by the Plaintiffs and other workers, who is/was involved in preparing/maintaining those time records, and whether or not Defendant owned or utilized a time clock or other time measuring device or system for tracking the Plaintiffs' or other worker's time worked.

(Doc. 34-1 at 6; Doc. 35-1 at 6.)  The Singhs responded to Interrogatory 7 as follows: "Jennilee was a salaried employee and would perform work as needed for the operation of the Knoll Inn, any work she performed was kept track of via text messages which have been produced.  In addition, see response to interrogatory No. 4."  (Doc. 34-1 at 6; Doc. 35-1 at 6.)  Mr. Singh added: "Mike Mason was not an employee."  (Doc. 34-1 at 6.)

Ms. Mason asserts that Interrogatory 7 "does not ask if Plaintiff Jennilee Mason kept track of her hours.  The question is what the *Defendant* did insofar as recording work time."  (Doc. 34 at 10; Doc. 35 at 10.)  The court interprets the Singhs' response as stating that the only procedure or method they used to record Ms. Mason's work time was via text messages.  The court further interprets the response as stating that no other procedure was used to track Mr. Mason's work time.  Based on those interpretations, the court concludes that the Singhs have sufficiently answered Interrogatory 7.

### J.     Interrogatory 8—Corporate Defendants

Interrogatory 8 as directed to the corporate defendants is the same as Interrogatory 6 as directed to the Singhs.  It asked:

> For any work done or performed by either Plaintiff from September 1, 2019 to the present, please state each Plaintiff's rate of pay on a per day, per week, per month and per pay period basis, respectively.  For each Plaintiff, state the amount and date of each payment, the number of hours of work each payment was designed to compensate, the business or financial institution from which each payment was drawn, the persons involved in delivering or in any way processing or handling

each payment to the respective Plaintiffs, and whether the wages paid to Plaintiffs were either identified or made part of your federal tax filings.  Please identify all documents relied upon in responding.

(Doc. 31-1 at 5–6; Doc. 32-1 at 5; Doc. 33-1 at 5.)  Grace Hospitality provided the same response that the Singhs gave to Interrogatory 6.  (Doc. 31-1 at 6.)  Ms. Mason's challenge to that response is the same as her challenge to the Singhs' response to Interrogatory 6.  (Doc. 31 at 10.)  The court's conclusion is likewise the same as above.  *See supra* Section II.G.

The court understands that Defendants have produced Ms. Mason's W-2 form and her ADP (payroll) records from 2019–2021.  (*See* Doc. 51-1 at 2.)  The court will require Grace Hospitality to supply further responses to Interrogatory 8 insofar as those documents and Grace Hospitality's current response do not answer each of the questions in the interrogatory.  The court further requires Grace Hospitality to expressly state whether Mr. Mason received any pay and whether he had a pay rate.

In response to Interrogatory 8, DAAT and Meher both stated that they "did not have any employees."  (Doc. 32-1 at 5; Doc. 33-1 at 5.)  Ms. Mason raises the same arguments about that response that she raises about DAAT and Meher's responses to Interrogatory 2—i.e., that the question has nothing to do with employee status.  (Doc. 32 at 7; Doc. 33 at 7.)  The court interprets DAAT and Meher's responses to mean that it did not pay either of the plaintiffs.  The court nevertheless concludes that although DAAT and Meher have no employees, those defendants must respond to Interrogatory 8.  If they have no knowledge of the answers, they must so state in a formal response, under oath, as is required.  Fed. R. Civ. P. 33(b)(3).

### K.    Interrogatory 8—The Singhs

Interrogatory 8 asked the Singhs the following:

Did you or any other Defendant in this case ever receive a report or complaint of sexual harassment/discrimination about any of its workers, agents, managers or employees, *including but not limited* to, James Taylor.  If your answer is in the

20

affirmative, please state: the name, address, telephone number, job title and sex of each applicant, employee, worker or person who made such a report or complaint, the date of each complaint/report, a description of the complaint and its substantive allegations, a description of the investigation and resolution of each complaint/report, the name, title and sex of each person responsible for resolving each complaint, the identification of the alleged harasser; and, provide the current employment status of each person filing the complaint/report.

(Doc. 34-1 at 7; Doc. 35-1 at 6–7.)  The Singhs both responded: "As set forth in her lawsuit, Jennilee Mason made a complaint about James Taylor.  No other complaints were received. After the complaint was made Amanda Singh spoke with Mr. Taylor about the complaint and he apologized to Jenni."  (Doc. 34-1 at 7; Doc. 35-1 at 7.)

Ms. Mason argues that the Singhs' answers are "woefully deficient and vague" because the question "is not just about whether a generalized complaint was made but rather, a *specific* type of complaint."  (Doc. 34 at 11; Doc. 35 at 11.)  She further asserts that "the complaints made against James Taylor include *any* complaints by *any* person—not just Plaintiff, Jennilee Mason."  (*Id.*)  The court finds nothing vague about the Singhs' statement that "[n]o other complaints were received."  The court will not compel the Singhs to supplement their response to Interrogatory 8.

## L.      Interrogatory 9—Corporate Defendants

Interrogatory 9 asked each corporate defendant essentially the same question posed to the Singhs in Interrogatory 7:

For the Relevant Time Period, in detail, please describe all procedures and methods by which the Defendant recorded the time and/or hours worked by the Plaintiffs and other workers, who is/was involved in preparing/maintaining those time records, and whether or not Defendant owned or utilized a time clock or other time measuring device or system for tracking the Plaintiffs' or other worker's time worked.

(Doc. 31-1 at 6; Doc. 32-1 at 5; Doc. 33-1 at 5.)  DAAT and Meher both responded that they did not have any employees.  (Doc. 32-1 at 5; Doc. 33-1 at 5.)  Ms. Mason argues that the question is

not about "employee" status but is instead about what DAAT and Meher did insofar as recording workers' time.  (Doc. 32 at 8; Doc. 33 at 7.)  The court interprets these defendants' responses as stating that they had no procedures or methods for recording worker time because they had no workers.  No supplementation is required.

Grace Hospitality gave the following answer to Interrogatory 9:

> Jennilee was a salaried employee so she was not required to keep track of hours however when there was a turnover of a room at the Knoll Inn or occasional need for her at the Budget Inn the Singh's would text Jennilee.  All text messages have been previously produced.  In addition, a log was kept of new check-ins.

(Doc. 31-1 at 6.)  Ms. Mason maintains that "[t]he question does not ask if Plaintiff Jennilee Mason kept track of her hours.  The question is what the *Defendant* did insofar as recording work time."  (Doc. 31 at 11.)

The court's conclusion here is the same as its conclusion as to Interrogatory 7 as posed to the Singhs.  The court interprets Grace Hospitality's response as stating that the only procedure or method it used to record Ms. Mason's work time was via text messages.  The court further interprets the response as stating that no other procedure was used to track Mr. Mason's work time.  Based on those interpretations, the court concludes that Grace Hospitality has sufficiently answered Interrogatory 9.

### M.    Interrogatory 9—Mr. Singh

Interrogatory 9 asked the Singhs:

> During the Relevant Time Period, please identify any company or business in which you were a manager, shareholder, director, manager [sic], supervisor, owner, or in which you had a legal, equitable or beneficial interest, *including but not limited to* any business that sold, distributed, or installed insulation, or insulation related products or services.  State the nature of the business, all addresses where each such entity or company conducted business or had a warehouse, and whether the Plaintiffs ever performed any work, duties or services for those businesses or companies.

(Doc. 34-1 at 7; Doc. 35-1 at 7.)  Ms. Singh responded "None" (Doc. 35-1 at 7); Ms. Mason does not challenge that response.  Mr. Singh responded:

> Green Surplus LLC.
> 21446 Rt. 22
> Hoosick Falls, NY 12090.
>
> Green Surplus provides customers with the highest quality recycled, surplus, and factory-second rigid foam insulation.
>
> No.

(Doc. 34-1 at 7.)

Ms. Mason argues that Mr. Singh's response is "vague, ambiguous and incomplete" because it does not list the Knoll Inn or the Budget Inn and because the State of Vermont lists at least six businesses affiliated with Mr. Singh.  (Doc. 34 at 12.)  She further asserts that the response ends with a cryptic "No," which she says is vague and ambiguous.  (*Id.*)

The fact that Mr. Singh's response does not mention the Knoll Inn or the Budget Inn is irrelevant, especially in light of the detailed questions about those businesses in the other interrogatories.  Notably, Ms. Singh's response did not mention the motels, either, but Ms. Mason has not challenged that response.  The court interprets the word "No" as responsive to the final question about whether the plaintiffs ever performed any work, duties or services for those businesses or companies.

The court has reviewed the Vermont Secretary of State's September 12, 2022 listing of business entities with Dipender Singh named as the registered agent.  (Doc. 34-3.)  It lists six active business entities.  Five of those are defendants in this case: the Budget Inn and the Knoll Motel (both assumed business names), plus DAAT, Inc., Grace Hospitality LLC, and Meher

Lodgings LLC.[8]  The sixth entity is Singh Renovations LLC.  The court will require Mr. Singh to

supplement his response to Interrogatory 9 with a response that includes Singh Renovations

LLC.  The court will also require Mr. Singh to state whether Green Surplus LLC is the only out-

of-state business or company responsive to Interrogatory 9.

### N.       Interrogatory 10

Interrogatory 10 asked Grace Hospitality essentially the same question that

Interrogatory 8 posed to the Singhs:

> Please state whether GRACE has ever received a report or complaint of sexual
> harassment/discrimination about any of its workers, agents, managers or
> employees, *including but not limited* to, James Taylor.  If your answer is in the
> affirmative, please state: the name, address, telephone number, job title and sex of
> each applicant, employee, worker or person who made such a report or complaint,
> the date of each complaint/report, a description of the complaint and its substantive
> allegations, a description of the investigation and resolution of each
> complaint/report, the name, title and sex of each person responsible for resolving
> each complaint, the identification of the alleged harasser; and, provide the current
> employment status of each person filing the complaint/report.

(Doc. 31-1 at 7.)  Grace Hospitality supplied the same response that the Singhs gave to

Interrogatory 8: "As set forth in her lawsuit, Jennilee Mason made a complaint about James

Taylor.  No other complaints were received.  After the complaint was made Amanda Singh

spoke with Mr. Taylor about the complaint and he apologized to Jenni."  (Doc. 31-1 at 7.)

Ms. Mason's argument about this response is the same as her argument about the Singhs'

response to Interrogatory 8.  (*See* Doc. 31 at 11–12.)  The court's conclusion is therefore the

same.  The court finds nothing vague about Grace Hospitality's statement that "[n]o other

complaints were received."  The court will not compel Grace Hospitality to supplement its

response to Interrogatory 10.

---

[8] It appears that "Meher Lodgings LLC" is the same as the "Meher Lodging LLC" that is
named as a defendant in this case.

24

### O.    Interrogatory 11

Interrogatory 11 asked Grace Hospitality to state whether it "shared workers, materials, supplies, vehicles, plows, supplies [sic], or equipment with any other business owned, operated, managed, supervised or overseen by [the Singhs], regardless of whether or not the other business is a Defendant in this case." (Doc. 31-1 at 7.)  The interrogatory further requested: "If so, identify the name, address and telephone number of each such other business, the type of business it performs, identify which workers, materials, supplies, vehicles, plows, supplies [sic], or equipment were shared, and provide the date of each instance." (*Id.*)  Grace Hospitality responded: "Grace is an operating company and doesn't . . . own any property or equipment, however if there was an emergency or unforeseen demand Grace employees who worked primarily at the Knoll Inn would help the Budget Inn and vice versa." (Doc. 31-1 at 7.)

Ms. Mason contends that this response is deficient "because the interrogatory is a YES or NO question." (Doc. 31 at 12.)  The court disagrees on this point.  The court understands Grace Hospitality's response to mean that the only shared assets or personnel are employees who might be assigned from the Knoll Inn to the Budget Inn or vice versa.  No supplementation is required for this interrogatory.

## III.   Requests for Production (Doc. 41)

Ms. Mason raises two issues with Defendants' responses to the Requests for Production. First, she asserts that Defendants should Bates stamp all of the documents produced. (Doc. 41 at 3.)  Second, she requests that the court enter an order requiring the production of personnel files. (*Id.* at 4–7.)

A.      **Bates Stamps**

Ms. Mason asserts that many of the documents in this case are PDF files that consist of thousands of pages of text messages between the parties, and that these documents "look nearly identical, and will easily cause confusion down the road if each document is not given a unique, identifying Bates number." (Doc. 41 at 3.) The defense responds that "[i]t is and always has been the practice of the undersigned to produce a production log labeling each set of documents and exhibits and then, if necessary, page numbering each set of documents and exhibits individually." (Doc. 51 at 2.) According to the defense, the risk of confusion is minimal because there is a production log (Doc. 51-1) and because all of the pages are clearly labeled with individual page numbers. (Doc. 51 at 2–3.) Finally, the defense states that "[i]f plaintiffs' counsel wants to sequentially Bates stamp all documents/exhibits produced [the] defense will take no issue with it, as plaintiffs' counsel can prepare for trial however he likes." (*Id.* at 3.) In reply, Ms. Mason asserts that the defense "fails to articulate *any* reason why it would be difficult or impracticable to simply Bates stamp the document production" and further asserts that Defendants "should *want* to Bates stamp the document production to avoid confusion." (Doc. 53 at 2–3.)

Rule 34 requires that the party producing documents must do so "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request" and that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E). Nothing in that rule or in this court's Local Rules specifically requires Bates stamps or control numbers on documents produced during discovery.

Here, although some of Ms. Mason's interrogatories implicitly requested Bates stamps (*e.g.*, Doc. 31-1 at 4–5), nothing in the Requests for Production requested Bates stamps (*see* Docs. 41-1, 41-2, 41-3, 41-4, 41-5). It is unclear precisely when Ms. Mason first requested that sequential numbers be affixed to the responsive documents. In any case, the parties now have a dispute on this issue. In resolving the dispute, "the court is not limited to the forms initially chosen by the requesting party, stated by the responding party, or specified in this rule [Rule 34] for situations in which there is no court order or party agreement." Fed. R. Civ. P. 34 advisory committee's note to 2006 amendment.

Initially, the court observes that the burden of adding Bates stamps to documents or materials is not always *de minimis*. The court in *Synventive Molding Solutions, Inc. v. Husky Injection Molding Systems, Inc.*, 262 F.R.D. 365, 378 (D. Vt. 2009), stated that the burden of identifying certain (already Bates-numbered) documents in interrogatory responses was *de minimis*. But the burden of adding Bates stamps to documents that have already been produced can be significant. *See AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2019 WL 1261986, at *12 (D. Kan. Mar. 19, 2019) (plaintiff argued that "using bates stamps would have required 'countless hours' which would be 'redundant, time consuming, and costly'"); *H.C. Duke & Son, LLC v. Prism Mktg. Corp.*, No. 4:11-cv-04006-SLD-JAG, 2013 WL 12247811, at *5 (C.D. Ill. Nov. 7, 2013) (recognizing that "the time required to Bates-stamp—and then re-inspect and copy—the January documents [comprising roughly 90% of documents produced] would unduly delay an already prolonged case").

Here, since Defendants assert that all of the documents at issue can be identified with reference to the production log and the page labels and numbers, the court will not require Defendants to add Bates stamps to its document production. As in *H.C. Duke*, however, the

court imposes the following caveat: "should the issue of whether a document was produced in response to Plaintiff's requests arise at trial, the burden will fall on Defendants to show that the document was indeed produced and identified to Plaintiff." 2013 WL 12247811, at *5.

**B.     Employee Personnel Files**

According to Ms. Mason, Defendants do not oppose serving certain personnel files or records, but have expressed concern that a court order is required.  (Doc. 41 at 6.)  She requests that the court enter such an order.  Defendants assert that the only defendant that had employees was Grace Hospitality, and the only employees were Ms. Mason and James Taylor (both salaried), and handyman Jimmy Saunders (hourly).  None of the defendants considered Michael Mason to be an employee, and therefore none of them have an employee file or record for him other than his resume.  (Doc. 51 at 3.)  Finally, Defendants assert that the production of personnel records for James Taylor and Jimmy Saunders must be considered under 12 V.S.A. § 1691a.[9]  Defendants note that Mr. Taylor's current physical location is unknown, and that Mr. Saunders has been informed of Plaintiffs' request for his employee records, but he has strongly objected.  (*Id.* at 4.)

The court begins with the defense objections.[10]  Defendants objected to multiple requests for personnel files on the grounds that they are "protected by Vermont law unless so directed by a Court order."  (*E.g.*, Doc. 41-1 at 2.)  Ms. Mason argues that 12 V.S.A. § 1691a does not apply in this federal case.  (Doc. 53 at 5.)  The court agrees.

---

[9] Defendants cite 12 V.S.A. § 1691 in their memoranda, but they are plainly referring to § 1691a.  That Vermont statute establishes a policy "that an employee's personnel records should not be discovered by a party in a civil action without first giving the employee notice and an opportunity to object to the discovery of the records."  12 V.S.A. § 1691a(a).

[10] As noted above, the court is considering the objections even though they were 17 days late.

28

"[B]y its own terms § 1691a applies only to civil actions commenced pursuant to Rule 3 of the Vermont Rules of Civil Procedure." *Turner v. Vt. Ctr. for the Deaf & Hard of Hearing, Inc.*, No. 2:02-CV-251, 2003 WL 27380992, at *5 (D. Vt. Oct. 1, 2003) (citing 12 V.S.A. § 1691a(b)(1)).  Plaintiffs filed their complaint in federal court, so the Federal Rules of Civil Procedure govern rather than the Vermont Rules of Civil Procedure.  Thus, Rule 26 of the Federal Rules of Civil Procedure—not the procedural requirements of § 1691a—govern discovery of personnel files in this case.  *Id.*

Since the relevant objections are based only on the purported protections of Vermont law, the court concludes that Defendants do not argue that production of the requested personnel files would violate Rule 26.  To the extent that Defendants are suggesting that § 1691a creates a privilege, the court rejects that theory.  *See Turner*, 2003 WL 27380992, at *5 ("Nothing in § 1691a creates a privilege for discovery purposes[;] . . . the statute merely creates a process for considering any objections an employee might have to production of the files.").  These conclusions simplify the disputes regarding the personnel files for the individuals discussed below.  As in *Turner*, if Defendants have concerns about the privacy impacts of disclosure of the personnel files, they should seek a protective order.  *See id.*

### 1.    The Singhs

Since the court is rejecting the objection based on § 1691a, there appears to be no further impediment to production of the Singhs' personnel files.

### 2.    "Liz"

Since the court is rejecting the objection based on § 1691a, that is not an impediment to production of the personnel files of Ms. Mason's supervisors or managers, including a manager

named "Liz." If "Liz" did not work for any Defendant during the "relevant time period" as the parties have defined it, then Defendants should so state.

### 3.    Mr. Mason

Grace Hospitality stated that "Mr. Mason was not an employee, so no file exists. Attached is an emailed resume he sent." (Doc. 41-1 at 1.) Putting aside any dispute about whether Mr. Mason should be classified as an "employee," Grace Hospitality has clearly stated that it has no personnel file for him. That is a sufficient response. *See Chandler v. Carroll*, No. 2:11-cv-167, 2013 WL 2323048, at *3 (D. Vt. May 28, 2013) ("Parties are only required to produce documents that exist; they have no obligation to create documents to support their adversary's theory of the case." (cleaned up; internal quotation marks omitted)).

### 4.    Jimmy Saunders

Since the court is rejecting the objection based on § 1691a, that is not an impediment to production of Jimmy Saunders's personnel files.

Asserting that Mr. Saunders has "strongly objected" to the production of his personnel records, Defendants appear to raise a new objection to the production on relevancy grounds. According to Defendants, the practice of moving employees between the Knoll Inn and the Budget Inn is undisputed "so it is unknown why the plaintiff[s] believe they need to establish it through Jimmy Saunders['s] employee records." (Doc. 51 at 4–5.)

Ms. Mason does not offer any clarification as to the relevance of Mr. Saunders's employee records, but she argues that Defendants have improperly raised this new objection in their opposition memorandum. (Doc. 53 at 4–5.) As noted above, courts generally apply Fed. R. Civ. P. 33(b)(4)'s waiver rule to document requests. *See, e.g.*, *Star Fabrics*, 2019 WL 3302610, at *1. Thus "when a party raises an objection to a discovery request for the first time in an

opposition to a motion to compel, that objection is waived, unless good cause exists to excuse the objection's untimeliness." *Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021) (cleaned up; internal quotation marks omitted). Courts consider a variety of factors to determine whether good cause exists. *See id.* at *11 (listing six factors, including prejudice to the party seeking the disclosure).

Here, the court cannot determine whether Ms. Mason would be prejudiced without disclosure of Mr. Saunders's employee records. If Defendants are correct in their assertion that Ms. Mason seeks the records only to establish the undisputed practice of moving employees between the Knoll Inn and the Budget Inn, then there would be no prejudice. The court will require the parties to confer again on this issue and provide supplemental briefs, if necessary, addressing the "good cause" factors.

### 5.    James Taylor

Ms. Mason asserts that Mr. Taylor "is a key witness and is specifically identified in the Complaint as the manager who sexually harassed [her]." (Doc. 53 at 4.) Although Defendants state that they do not know Mr. Taylor's current location (Doc. 51 at 4), that is irrelevant to the production of his personnel file in this case because § 1691a's notice requirement does not apply in this case.

## IV.    Attorney's Fees

Each of Ms. Mason's motions to compel seeks attorney's fees under Fed. R. Civ. P. 37. (Doc. 31 at 13; Doc. 32 at 8; Doc. 33 at 8; Doc. 34 at 12; Doc. 35 at 12; Doc. 41 at 7.) Defendants do not explicitly address that request except in their joint opposition to Ms. Mason's motion to compel supplemental responses to the Requests for Production. In that filing Defendants state: "In this case, as with the other motions to compel, attorney's fees are not

appropriate as the defendants' responses were justified given the circumstances and there was no malicious intent on the part [of] defendants in responding as they did." (Doc. 51 at 5.) Defendants further state that "[a]bsent some findings of egregious behavior on the part of the plaintiffs, the defendants will not seek attorney's fees if plaintiffs' motion is denied." (*Id.*)

Here, each motion to compel will be granted in part and denied in part. Thus, under Rule 37, "the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Given the mixed result on each motion, the court concludes that each side should bear its own costs. *See Country Home*, 2016 WL 9344261, at *5 (citing *Safespan Platform Sys., Inc. v. EZ Access, Inc.*, No. 06-CV-726A, 2011 WL 7473467, at *5 (W.D.N.Y. Dec. 30, 2011)).

## **Conclusion**

Ms. Mason's motions to compel supplemental interrogatory responses (Docs. 31, 32, 33, 34, 35) are each GRANTED IN PART and DENIED IN PART as described above.

Ms. Mason's motion to compel supplemental responses to the request for production (Doc. 41) is GRANTED IN PART and DENIED IN PART as described above.  Regarding personnel files, Defendants may seek a protective order if they have concerns about the privacy impacts of any disclosures.  Within 30 days, the parties shall confer regarding disclosure of Mr. Saunders's employee records and shall provide supplemental briefs, if necessary, addressing the "good cause" factors.

Each side bears its own costs.

Dated at Burlington, in the District of Vermont, this 19th day of December, 2022.

Geoffrey W. Crawford, Chief Judge
United States District Court